No. 18.—HENRY JACKSON, plaintiff in error, *vs.* BENJAMIN H. GRAY and another, defendants.

[1.] Where G obtained the legal title to land, as *security* for the money advanced by him to R, the *vendor*, for J, the *vendee*, promising to re-convey the same to J, on the repayment of the sum so advanced, with 20 per cent. interest, but fraudulently sold the land to another, who bought with notice: *Held*, that under such circumstances, a Court of Equity would adjudge the defendants *trustees* for the party defrauded, and decree a specific performance of the contract, or pecuniary compensation for the property.

In Equity. Decided by Judge STARK, May Term, 1850, of Houston Superior Court.

This was a bill filed to compel specific performance.

The bill alleges that the complainant, Henry Jackson, was the owner, in fee simple, of lot of land No. 165, in the 5th district of Houston County; that in the year 1843, Alger, as Constable, levied on said lot of land, by virtue of *fi. fas.* issued from a Justice's Court—there being personal property in the possession of complainant, more than sufficient to have satisfied said *fi. fas.* In the month of May, 1843, the land was sold at public outcry, by the Sheriff of Houston County, when Charles H. Rice was the highest bidder, and the same was knocked off to him. Rice took no titles from the Sheriff, and allowed the complainant to remain in possession of the land, under a parol contract to the effect, that if, in three weeks from the time the land was sold by the Sheriff, complainant would pay to Rice the sum of $450, Rice was to relinquish all claim to the same to the complainant.

The bill charges, that complainant applied to Benjamin H. Gray, who was at the time a money lender, and proposed to him to advance the money to Rice, as a loan to complainant, who should remain in possession of the land, while Gray was to take titles to the land from the Sheriff, as security for the money so advanced, which were to be re-conveyed to complainant, provided complainant paid to Gray $480 by the 1st day of January, 1844.

The bill alleged, that Rice abated fifty dollars from the original amount proposed to be taken for the benefit of complainant; that the contract with Gray, owing to the confidence reposed in him by complainant, was not reduced to writing; that Gray procured a deed to be executed to him from the Sheriff, without any condition, and failed to give to complainant any defeasance or counter deed—all with a view to defrauding complainant.

The bill charges that within the time specified, to wit: on the 1st day of December, 1843, complainant tendered or offered to pay to Gray the sum of four hundred dollars, with interest thereon, at and after the rate of 20 per cent. per annum, which he refused to receive.

The bill charges, that on the 10th day of October, 1843, while complainant was still in possession of said land, by virtue of his contract with Gray, the latter sold said land to Isaac Alger, for the sum of seven hundred dollars—the said Alger purchasing with a full knowledge of the agreement existing between complainant and Gray.

Complainant offered, in his bill, to pay to Gray the amount of money agreed to be paid him for the land, and charged confederacy between Gray and Alger, to defraud him out of the land.

To this bill, an amendment was subsequently filed, which alleged that although Rice, on the day of Sheriff's sale, was the highest bidder, yet no money was ever paid by him, in compliance with such bid, and that no note or memorandum was ever made of the sale or bid.

By their answer, the defendants admitted the purchase, by Rice, of the land, at Sheriff's sale, but denied any knowledge of

Jackson *vs.* Gray and another.

a contract between Rice and the complainant, as charged in the bill. The answer also denied all the obligations in the bill, as to Gray's advancing the money to Rice for the land, for the benefit of complainant, or as a loan to him.

In their answer to the amended bill, which came in during the term of the Court at which the cause was tried, the defendants pleaded the Statute of frauds.

On the trial, counsel for complainant moved to strike said plea, on two grounds—

1st. Because said plea was filed too late.

2d. Because the plea was not set up in bar of the relief prayed for by the original bill, but was embodied in the answer to the amended bill.

The Court proposed to allow the complainant to continue the cause on the ground of surprise, which was declined, and the objections to the plea were overruled. To which counsel for complainant excepted.

The bill and answer having been read to the Jury, counsel for defendant moved to dismiss the bill for want of equity, which motion was sustained by the Court, and complainant excepted.

KING, HALL and ROGERS, for plaintiff in error.

WARREN and SCARBOROUGH, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Should the complainant's bill have been dismissed for want of equity? What are the facts in this case? Henry Jackson, the complainant, was the owner of lot No. 165, in the 5th district of Houston County. One Henry Feagan, having some Justices' Court *fi. fas.* against Jackson, caused them to be levied by Isaac Alger, a Constable, on the lot of land which was sold by the Sheriff, on the first Tuesday in May, 1843; and Charles H. Rice, being the highest bidder, the same was knocked off to him at the sum of $230. No money was paid at the time. Subsequent to the sale, an agreement was entered into between

Rice and Jackson, by which the latter was to retain the property, provided he would pay Rice $450 in three weeks; and by virtue of this arrangement, Jackson remained in possession of the premises. Not having the money himself, Jackson applied to Benjamin H. Gray, a cash capitalist and money lender, who agreed to advance the $450 to Rice for Jackson, provided he would refund the amount, with 20 per cent. interest, on or before the 1st of January, 1844, and Gray was to take a deed to himself, as security for the loan. Gray paid the purchase money to Rice—*Rice deducting $50 from the price, through kindness to Jackson,* and a Sheriff's deed was made to Gray. The bill charges that Gray had nothing to do in making the conrtact, but acted solely as the friend and trustee of Jackson in paying the money. Within the time specified, to wit: on the first of December ensuing, Jackson tendered to Gray principal and lawful interest and usury, and demanded titles. But Gray, in the month of October preceding, sold the land to Isaac Alger, the Constable, for $700, who ejected Jackson from the premises. The bill charges that Alger had notice of all the equities between the parties, and that the land is worth $1000; and it seeks to cancel the deed from Gray to Alger, and to have a conveyance executed to the complainant, or to have the value of the land paid the complainant, together with the rents, issues and profits which have accrued since his eviction. Is this contract void by the Statute of frauds?

Most clearly not. The parol agreement has been so far performed, that a Court of Equity will compel its execution. The price paid to Rice for the land, was the money of Jackson. He borrowed it of Gray for that purpose, giving him twenty per cent. on the loan, and a deed to the land, as security for its re-payment at a time designated. Re-payment was tendered within the time stipulated. Gray then held the title as *trustee* for Jackson.

But again, Jackson's possession was neither wrongful nor independent of the contract with Rice, but under and by virtue of that contract. It was not by virtue of his original ownership or tenancy, but solely and exclusively under and by virtue of

Jackson *vs.* Gray and another.

the subsequent agreement between Rice and himself. Under the facts alleged in this bill, could Rice, before payment, or Gray, afterwards, have treated Jackson as a trespasser, had he gone into possession under this contract? Certainly, if this parol contract is to be deemed a nullity. And yet, if it can be established by clear and competent proof, a specific performance will undoubtedly be decreed, as upon every principle of justice it should be.

*Cameron vs. Ward,* (8 *Geo. Rep.* 245,) was a weaker case than this; and yet this Court, very properly holding that the Statute was enacted to *prevent* fraud, and not to *protect* it, determined that the bill made a proper case for Equity jurisdiction, and that the defendants who had there, as here, obtained the title as security for the money advanced by them for the complainant, should be held as *trustees* for the party defrauded, and should not be allowed to shelter themselves under the Statute.

And I would take occasion to remark, that while we renounce all claim to a latitude of jurisdiction in such cases, and do not feel at liberty to depart from the settled course of adjudications upon the Statute of frauds, yet, that under our Special Jury system, so far from construing the Statute *strictly,* we are rather inclined to give a liberal construction to the exceptions which have been established to withdraw cases from its operation, believing, as we do, that in this way we shall best subserve the purposes of justice and honesty.

And taking this view of the main question, it becomes unnecessary to decide any other made in the record.

Let the judgment be reversed.