J. C. RAWLINS, plaintiff in error, *vs.* MARY A. SHROPSHIRE, defendant in error.

1. The Statute of Frauds requires that any contract for the sale of lands or any interest in or concerning them, must be in writing, signed by the party to be charged therewith, or by some person by him lawfully authorized; but the Statute of Frauds does not extend to cases where the contract has been *fully executed*, or where there has been performance on one side, accepted by the other, in accordance with the contract.

2. Full payment alone accepted by the vendor, if clearly proved with reference to the parol contract, will be sufficient part performance to justify a Court of equity to decree a specific performance of such parol contract for the sale of land.

3. To allow the vendor of the land or his legal representatives to retain the land and the purchase-money paid therefor, as against the vendee and those claiming under him, would be a fraud upon the latter which a Court of equity will not permit or sanction.

Ejectment. Equity practice. Before Judge PARROTT. Floyd Superior Court. July Term, 1872.

Rawlins *vs.* Shropshire.

In the opinion of the Court, delivered from the bench, will be found all the facts necessary to an understanding of the points decided.

ALEXANDER & WRIGHT; SMITH & BRANHAM, and DUNLAP SCOTT, for plaintiff in error.   Parol contract for land, executed, will be enforced: Revised Code, secs. 1940, 1941, 2488, 2152 to 2167 inclusive; 2170, 2813, 2814, 3130 to 3136 inclusive; 30 Ga. R., 96; 3d, 5.   The equity against Shropshire and his representatives was perfect: 3 Ga. R., 5; 12th, 464; 24th, 150; 29th, 17: Cook *vs.* Duer, decided 5th March, 1872.   Seven years' acquiescence binds widow and children: Revised Code, section 2166; 32 Ga. R., 80.   The decree should follow the verdict: Revised Code, secs. 3026, 3027, 3514, 4154; Borum *vs.* Thweatt, March 5th, 1872.

UNDERWOOD & ROWELL; WRIGHT & FEATHERSTON, for defendant.

WARNER, Chief Justice.

On the 12th day of June, 1869, the heirs-at-law of F. C. Shropshire brought an action of ejectment against J. C. Rawlins to recover the possession of a tract of land in the county of Floyd, containing twenty-seven and one-half acres, being the place whereon F. C. Shropshire formerly resided.   The plaintiffs are the widow and children of F. C. Shropshire. When the case was called for trial the defendants made a motion for a continuance, on the ground that they desired to file a bill on the equity side of the Court to bring other parties before the Court, and set up certain equities against the plaintiff's right to recover in the action of ejectment, stating to the Court the facts which constituted their equitable defense. The Court overruled the motion, on the ground that under the existing laws of this State new parties could be made, and the rights of all could be settled on equitable principles in the present action.   The defendant then amended his plea,

setting forth his equitable grounds for relief, and the Court granted an order making Wesley Shropshire, administrator of F. C. Shropshire, a party plaintiff, and also making J. P. Hults, through whom defendant claimed title, a party defendant. The cause then proceeded to trial, when the following facts, in substance, were proved as disclosed by the record. In the summer of 1862, F. C. Shropshire, a short time before he left home to enter the Confederate service, told the witness, Johnson, that he was then preparing to enter the service, and needed all the money he then had, but said he had put his place (the property in dispute) in the hands of Mr. Stevens, for sale, and, so soon as he made sale of it, would then be able to pay all his debts; said he could not pay his debts until the property was sold; requested the witness to assist Stevens in the sale of it, and if he could find any one wishing to purchase to send them to Stevens; said his price for the property was $5,000.

On the 18th of November, 1862, Hults purchased the property of Stevens, as the agent of F. C. Shropshire, and paid him therefore the sum of $5,000 in cash. The money was raised by calling in loans made previous to the war, receiving the Confederate money paid for the land. from his debtors as gold, dollar for dollar. Shropshire was living at the time of the purchase of the property, but died shortly afterwards, before a deed was executed. Stevens, the agent, is also dead. After the sale of the property by Stevens to Hults, Mrs. Shropshire, the widow and her children, vacated the premises, and Hults took possession of it under the purchase from Stevens, as the agent of Shropshire, on the 1st of March, 1863, and continued in possession of it until 1866, when he sold it to Cleaves for $5,000 cash. Shortly after the death of F. C. Shropshire, his father, Wesley Shropshire, became the administrator on his estate, and executed a bond to make a title to the property in which it is recited: "Whereas, Francis C. Shropshire, in his lifetime, by his agent, J. R. Stevens, did sell the place where he resided near Rome, Geor-

gia, for the sum of $5,000." This bond is dated on the 26th December, 1862, when all the facts relating to the sale of the property may fairly be presumed to have been well known to the parties interested. On the 31st of October, 1866, Wesley Shropshire, the administrator, made a deed to the property to Cleaves by the consent of Hults, who had sold the property to Cleaves. In this deed it is recited that, "Whereas, Francis C. Shropshire did, in his lifetime, by his agent, J. R. Stevens, sell his residence near Rome, and the lands thereunto belonging, being about twenty-seven and a half acres of land, and did then depart this life intestate without executing title thereto, and afterwards the said Cleaves did pay me, the administrator of the said Francis C. Shropshire, the purchase money to-wit, $5,000, which I was enabled to apply to the payment of the debts of said estate."

This deed was written by Judge Wright, the father of Mrs. Shropshire and the grandfather of her children, who are the plaintiffs in the ejectment suit, and was executed by the paternal grandfather of the children. Hults swears that the deed was prepared by Judge Wright and handed to him by Judge Wright, who assured him the deed was good and conveyed a perfect title to Cleaves. Judge Wright, who was examined as a witness, admits writing the deed, but denies telling Hults the title was good. Hults asked him to write the deed and paid him for writing it. The reason why the deed was made direct to Cleaves instead of to Hults was to save stamps. Wesley Shropshire, who was examined as a witness, states that Judge Wright advised him to accept the money and pay Francis' debts ; that he has paid all the debts with the money except one. In his return to the Court of Ordinary, Wesley Shropshire charges himself with the following receipt : "Received December 26th, 1862, of J. R. Stevens, $5,000 in full for the purchase of F. C. Shropshire's house and lands on the Calhoun Road, one and one-fourth miles from the city of Rome, Georgia. Wesley Shropshire,.

administrator of F. C. Shropshire, deceased." The original receipt was read in evidence and proved to have been written by Judge Wright, (as well as the bond,) who was the legal adviser of the administrator. The return also shows the payment of debts of F. C. Shropshire to the amount of $4,750. No other property belonging to the intestate's estate except the $5,000 mentioned in the receipt to Stevens for the proceeds of the sale of the premises in dispute, appears in the returns of the administrator to the Court of Ordinary: In December, 1868, Cleaves sold the property to Rawlins for $6,000, who made valuable improvements on it worth $1,200. Cleaves was dead at the time of the trial.

There is other testimony in the record, but the foregoing recital embodies the main facts which must control our judgment. The jury, after hearing the charge of the Court, returned the following verdict : "We, the jury, find for the plaintiffs the premises, together with $1,452 for rents ; and find for the defendants $5,000 and interest on the same from the 18th day of November, 1862, to date, and in addition thereto the sum of $1,200, and interest on that amount from the 27th day of July, 1864, for improvements, and plaintiffs to pay the costs of suit. This 27th July, 1871. Eben Hillyer, foreman." On this special verdict of the jury the Chancellor ordered the following decree to be entered : "It is ordered adjudged and decreed by the Court, that the said heirs of Francis C. Shropshire do recover of the said J. C. Rawlins and his tenants the premises in dispute, and that the Clerk do issue the usual writ of possession for said premises after the expiration of thirty days from this date, and that the rents be set off against the improvements as the value of the improvements made by Rawlins, and interest thereon just equals the rents. And that John P. Hults do recover of Wesley Shropshire, as the administrator of Francis C. Shropshire, deceased, the sum of $5,000 principal, and the sum of $3,042 07 interest to date; and that the defendants recover of plaintiffs the sum of ...... dollars, costs of

suit. August 9th, 1871. J. R. Parrott, Judge, presiding."
This decree is excepted to, and also the charge of the Court
to the jury is excepted to. If we are to consider this case as
being tried, according to the well established principles which
govern Courts of equity in enforcing the specific performance
of parol contracts for the sale of land, then there was mani-
fest error in the charge of the Court to the jury, but the
charge of the Court does not appear to have hurt the de-
fendants, for the jury, notwithstanding the errors in the
charge of the Court, have returned an equitable verdict.
The effect of their verdict is the enforcement of the parol
contract made between Hults and Stevens, as the agent of
F. C. Shropshire, for the sale of the land. It is true the
jury, in the exercise of their discretion, have decreed the
land to the plaintiffs, but they have decreed, at the same
time, that Hults, or those claiming under him, are entitled
to be first paid the purchase-money which the ancestor of the
heirs received for the sale of the land, and which has been
applied to the payment of his debts. This is a very crafty,
subtle attempt to appropriate the money for which the land
sold to the payment of the debts of the intestate, and thus
protect the property from the payment thereof for the ben-
efit of the heirs, under the *strict forms of law*, contrary to
the principles of equity and good conscience. What equity
or justice is there in making Shropshire, the administrator,
pay the $5,000, with the interest thereon, when it has been
applied by him, in good faith, to the payment of the debts
of the intestate ? The heirs of the intestate were not entitled,
either in law or equity, to inherit his property until the debts
due by him were first paid. There can be no doubt, from the
evidence in the record, and the conduct of the parties inter-
ested in the sale of this property, that Stevens was the agent
of F. C. Shropshire to sell it, and that he did sell it during
the life of Shropshire, and received therefor the sum of
$5,000 from Hults, the purchaser, which sum of $5,000
(less Stevens' commissions) was paid over to his administra-

tor and applied by him in payment of the intestate's debts. These are the plain, naked facts of the case.

It is true, there is no evidence of any written authority from F. C. Shropshire to Stevens to sell the land, and it is also true that no deed was made by Shropshire or his agent during his life, but his legal representative received the purchase-money and applied it for the benefit of his estate. How stands the equities between the purchaser of the land and those claiming title under him, and the heirs of the intestate? But for the money paid by the purchaser for the land, the land would have been taken to pay the intestate's debts. Shall the heirs of the intestate hold and enjoy the land without paying back to the purchaser of it the amount he paid, and which was applied to the payment of the intestate's debts to enable them to enjoy it? Shall the heirs of the intestate have the land and the money paid by the purchaser of it without refunding to him the money paid for their benefit? If their is any equity or justice in that, we are unable to see it. If F. C. Shropshire, while in life, had made a parol contract with Hults for the sale of the land, and had received the consideration therefor, a Court of equity would have compelled a specific performance of it.

Full payment alone accepted by the vendor, if clearly proved with reference to the parol contract, will be sufficient part performance to justify a decree. Code section 3131. The statute of frauds requires that "Any contract for the sale of lands, or any interest in or concerning them, must be in writing, signed by the party to be charged therewith, or by some person by him lawfully authorized." But the Statute of Frauds does not extend to cases where the contract has been *fully executed*, or where there has been performance on one side, accepted by the other, in accordance with the contract: Code, sections 1940, 1941. The parol contract in this case for the sale of the land was made by Shropshire through his agent, Stevens; the purchase-money for the land was paid by Hults and accepted by Shropshire's

Rawlins vs. Shropshire.

agent for him.  There was a performance on one side and an acceptance by the other, in accordance with the contract, and it would be a fraud on Hults, and those claiming under him, not to compel a specific performance of the contract which the jury, by their verdict, have done in this case. The verdict of the jury is in accordance with the well established principles by which Courts of equity are governed, in decreeing the specific performance of parol contracts within the Statute of Frauds.  We, therefore, affirm the verdict of the jury, and reverse the decree made by the Chancellor upon that verdict, and award the following judgment in this case.

It is considered, ordered and adjudged by the Court that the special verdict rendered in this case be affirmed, and that the decree made thereon, signed by the Chancellor, as set forth in the record, be reversed, vacated and set aside, and that the Chancellor do make and sign the following decree upon said verdict:  The jury in the above stated case, after hearing the evidence submitted to them under the pleading set forth in the record, returned the following special verdict:  "We, the jury, find for the plaintiffs the premises, together with $1,452 for rents; and find for the defendants $5,000 and interest on the same from the 18th of November, 1862, to date; and in addition thereto, the sum of $1,200, and interest on that amount from the 27th of July, 1868, for improvements, and plaintiffs to pay the cost of suit. This 27th July, 1871.  Eben Hillyer, foreman."

It is therefore ordered and decreed by the Court, that the plaintiffs do have and recover the premises described in the record on the payment of the sum of $5,000, with interest on the same from the 18th day of November, 1862, up to the 27th day of July, 1871, to the defendants within sixty days after the date of this decree; and that the sum of $1,200, together with the interest on that amount from the 27th day of July, 1868, up to the 27th day of July, 1871, for improvements, be set-off against the sum of $1,450 found for

the plaintiffs for rents, and that the plaintiffs do pay the costs of suit to be taxed as required by law.