## PEOPLES BANK OF CALHOUN *et al. v.* HARRY L. WINTER INCORPORATED.

1. The special demurrers are without merit.

(a) The two defendants named both being interested in the subject-matter of the suit, both were proper parties to the proceeding, and there was no misjoinder.

(b) The nature of the action did not require an allegation of contractual relationship on the part of the plaintiff with the defendant bank, and the allegations of the petition were such as to obviate any necessity of alleging deceit or fraud otherwise than in the statements relating to the promise of the cashier of the defendant bank, made in order to procure the proceeds of the proposed loan by plaintiff's agent to Alexander, the borrower.

(c) Where one's right of action depends upon a promise made for his benefit, and where the entire consideration moving to the promisee was furnished by him, it is immaterial that the alleged contract originated in an agreement to which he was not a party. The advancement or furnishing of the consideration will supply the necessary privity.

(d) Where a bank, which has a lien upon land, agrees with its debtor, the maker of such lien, that the debtor can borrow money from a third person and secure the same by a first lien upon the land, and where the third person makes a loan to the debtor, and to secure the same takes as security a lien upon the land, believing it to be a first lien, and without actual notice of the bank's lien, and the bank, with knowledge of the fact that such third person was making a loan to the debtor of the bank under the belief that it was getting a first lien to secure its loan, receives and retains the full proceeds of the loan, the bank will be estopped to set up its lien against the lien of such third person.

(e) In an action predicated upon the fact that a lender advanced a loan upon the statement in an abstract of title that there was no lien or incumbrance against the realty offered as security for the loan, which statement had been induced by the promise of a third person to remove such incumbrance or subordinate the same to the security title of the lender, the contents of the application for the loan are immaterial.

2. The court properly overruled the general demurrer to the petition.

No. 4717. FEBRUARY 22, 1926.

Equitable petition. Before Judge Tarver. Gordon superior court. December 20, 1924.

Banks and Banking 7 C. J. p. 549, n. 71; p. 553, n. 97; p. 556, n. 25.
Contracts 13 C. J. p. 705, n. 4; p. 711, n. 38 New.
Frauds, Statute of, 27 C. J. p. 302, n. 24; p. 343, n. 96; p. 350, n. 56.
Mortgages 27 Cyc. p. 1225, n. 74; p. 1226, n. 78; p. 1229, n. 3, 4 New.
Parties 30 Cyc. p. 127, n. 55.
Pleading 31 Cyc. p. 55, n. 12; p. 333, n. 76.
Subrogation 37 Cyc. p. 390, n. 52.

*J. H. Paschall* and *J. M. Lang,* for plaintiffs in error.

*Ryals & Anderson* and *A. L. Henson,* contra.

RUSSELL, C. J.   Harry L. Winter Incorporated filed a petition in two counts against the Peoples Bank of Calhoun and against Mrs. C. M. Alexander as administratrix of the estate of C. M. Alexander, deceased, alleging as follows: In 1920 C. M. Alexander made an application for a loan to the Georgia Loan & Trust Company, which resulted in that company lending $3500 to the applicant, who executed to secure the same a deed to certain described premises.   The loan was not paid, and in consequence the petitioner obtained a judgment in the superior court of Gordon county for the principal sum, with interest, attorney's fees, and costs; execution from which judgment had been levied upon the land, when the petitioner learned for the first time that the Peoples Bank had obtained a prior judgment against C. M. Alexander for $4553 principal, interest, and attorney's fees, which the bank claimed was superior to petitioner's deed to secure its debt.   The land is not worth the amount of the two judgments; the estate of C. M. Alexander is insolvent; and if the Peoples Bank should be allowed priority on its judgment, the petitioner will be unable to collect its judgment or any considerable portion of the same.   Its loan to Alexander was made under the following circumstances: Alexander had applied, through his attorney and agent, to the Georgia Loan & Trust Company for a loan of $5000.   The company declined to lend Alexander more than $3500.   On March 16, 1921, pending Alexander's application for this loan he executed to the Peoples Bank a deed as security for $7418.38, which covered the same tract of land as that offered by Alexander to the Georgia Loan & Trust Company as security for the loan sought by him. But this fact was unknown to the Georgia Loan & Trust Company, except by the constructive notice imported as matter of law by the record of the deed.   At the time the loan was made the existence of this deed was in fact unknown to the Georgia Loan & Trust Company.   When the said trust company declined to loan $5000 and would only lend $3500, A. L. Henson, the attorney and agent of C. M. Alexander, "called a conference between the said C. M. Alexander, the applicant for said loan, and B. W. Blackmon, the cashier of said Peoples Bank, in the office of the said Henson, at

Calhoun, Georgia, and explained to them that he had been unable to procure a larger loan than $3500 on said land, after diligent effort, and that the loan would not be made at all unless the said C. M. Alexander could give the lender a first mortgage on said land; and that the said B. W. Blackmon thereupon requested the said A. L. Henson to go ahead and consummate the loan and pay the proceeds thereof to the Peoples Bank, and agreed that said bank would take a second mortgage for the balance of the said Alexander's indebtedness to it, after the payment to the bank of the net proceeds of said loan."

In the second count of the petition it is alleged, that, relying upon the agreement of Blackmon, the cashier, in behalf of the bank, Henson, representing Alexander, accepted plaintiff's offer of $3500, and on January 21, 1922, Alexander executed and delivered his deed to secure the $3500, besides interest and attorney's fees; that neither Alexander nor his agent gave any notice to the petitioner of the existence of the prior deed made by Alexander to the Peoples Bank, because they relied upon the assurance of Blackmon, cashier, that the same would be made secondary to the deed to secure debt given by Alexander to the petitioner when the proceeds of the loan were paid over to the bank; that the attorney at law employed by Alexander to abstract the title of the land, being advised by Alexander and his agent, Henson, of the agreement with the cashier, Blackmon, reported to petitioner's agent, the Georgia Loan & Trust Company, that there was no lien or incumbrance on the land; that the Georgia Loan & Trust Company, as agent for the petitioner, then issued a check for the net proceeds of the loan, which check was indorsed by Alexander and turned over by him to the Peoples Bank pursuant to the agreement, and the bank received the entire proceeds of the loan; that on account of an oversight of T. H. Lang, an attorney, "who was handling said title," the agreement of the bank "to make its deed to secure debt second and inferior to the deed to secure debt in favor of. petitioner was not. reduced to writing, all parties having notice of said agreement, having full confidence in said bank, and believing that it would live up to said agreement, whether put in writing or not." The petitioner prayed: (a) that the deed executed by Alexander to the Peoples Bank be decreed to be second and inferior to the deed to se-

cure petitioner's debt, (b) that the lien of the judgment in favor of the bank be decreed to be inferior to the lien of the judgment in favor of the petitioner, (c) that if for any reason the petitioner should not be entitled to priority as prayed, the court decree that the petitioner be subrogated to that portion of the indebtedness of C. M. Alexander to the Peoples Bank which was paid out of the proceeds of petitioner's loan to Alexander, and petitioner be decreed to stand at least on an equality with the Peoples Bank as to the residue of the indebtedness secured by said deed; (d) for general relief. The defendants demurred to the petition upon numerous grounds. The demurrers were overruled upon all of the grounds. The defendants excepted to that judgment, as was their right, since had the demurrers been sustained by the court the judgment would have concluded the case.

We think the court correctly overruled the demurrers. For the purpose of demurrer the allegations of the petition must be taken as true; and thus treating them, we are of the opinion that the plaintiff had a case that was not subject to either the general or the special demurrers. The special demurrer based upon misjoinder of parties defendant, and alleging that it does not appear how or why the administratrix of Alexander and the Peoples bank should be joined, is without merit, because the subject-matter of the litigation was the same piece of property which both creditors insisted was subject to their liens, and the administratrix of Alexander was a like debtor to both, and might have a residuary or contingent interest even if both debts were paid, with the right to contest indebtedness to both or either of them. The second special demurrer alleges that the petition "fails to allege any contractual relation with the defendant bank, or that said bank had any notice of any contract with C. M. Alexander of which said bank had notice. It fails to allege that either of defendants did anything whatever to deceive, defraud, or wrong plaintiff. There is no allegation of any misrepresentation, deception, or fraud on plaintiff or its agents." The merit of this demurrer must depend upon whether the cashier of the bank was authorized to make the agreement alleged in the petition, or, in other words, whether the cashier of a bank, as such, has the right to make such an agreement as that alleged in this petition. If so, the bank is bound by it with all the consequences that at-

tach. We think there is no question that in the absence of any showing to the contrary, and as a general rule, the cashier of a bank in this State is peculiarly that agency of the bank authorized to make loans, empowered to make collections, and whose special duty it is in a general way to give direction to and further the interests of its stockholders in its corporate capacity. It is alleged in the petition that the cashier of the bank requested that the offer to loan $3500 be accepted. He required in return that the entire proceeds of the loan be paid to the bank, from which it may be presumed that the bank was more in need of actual money than of evidences of indebtedness. With the power to which we have referred, he promised, upon the consideration just stated, that he would subordinate the balance of the indebtedness due the bank (receiving an amount in cash almost equal to what was not thus paid) to the security deed which he understood and agreed should be placed upon the specified land upon which the bank at that time held a paramount lien for the entire indebtedness. It is not necessary, under these circumstances, to allege "any misrepresentation, deception, or fraud on the plaintiff." Fraud is not created or described by mere denomination. Fraud can not be properly pleaded except by a statement of such facts as themselves evidence fraud; and thus treating the matter, we have no hesitation in holding that if the cashier of the bank at the time he made the promise intended to secure from the lender $3500 without returning any consideration whatever, such a state of facts would constitute a fraud whether so denominated or not.

The defendants demurred next upon the ground that the plaintiff was not a proper party, it appearing that the suit was an effort to set up a contract between Alexander and the bank, to which contract the plaintiff was not a party. According to the allegations of the petition the contract must be construed as a tripartite agreement. Alexander and the bank, through its cashier, were certainly present, and we may admit for the sake of argument that they made the agreement, but certainly it was made for the benefit of the proposing lender; and it is well settled that under such circumstances one for whose benefit an agreement is made, if he parts with anything of value thereunder, is entitled to enforce the agreement. Under the circumstances as pleaded

it was not necessary for the petitioner to allege that it knew of the alleged agreement to let the deed from Alexander to the Georgia Loan & Trust Company be superior to the one held by the bank, or that this agreement operated on the petitioner to advance the money for the loan. Subsequent allegations in the petition relate how this agreement was the cause of the borrower and his attorney making the statement that there were no liens or incumbrances outstanding against the property. By reason of the principle just referred to, the lender was entitled to claim the provision which had been made expressly for its benefit. There was no necessity to attach a copy of the application made by Alexander, as insisted in the seventh ground of the special demurrer. This was a matter entirely between the applicant and the petitioner; and so far as appears from the record and the demurrer, its contents would have been wholly impertinent to the proceeding. Paragraph eight of the demurrer is as follows: "Paragraph 4 in both counts is demurred to as being an alleged agreement with the bank and C. M. Alexander, to which the plaintiff was not a party, and of which it had no notice. It fails to allege, either in this paragraph or elsewhere in the petition, how the plaintiff was or could have been damaged or misled by a contract between said parties with which the plaintiff was entirely ignorant, and without alleging that the plaintiff and its agents knew of said agreement and relied upon the defendants to comply with it, and that by reason of relying on said agreement it acted to its injury in loaning Alexander the money. It is further demurred to in failing to allege any reason for the plaintiff [not?] being bound by the notice of all recorded deeds. It alleges that the deed held by the bank was duly recorded, and fails to allege any reason why plaintiff is not bound by such constructive notice. The latter part of said paragraph is demurred to in failing to say whether the agreement for the bank to take a second mortgage was in writing, and, if in writing, in failing to attach a copy of said agreement. If not in writing, it is not alleged how the same would be binding." The contentions of this paragraph are substantially the same, as has already been ruled. As already held, the plaintiff, though not a party to the agreement between Alexander and the bank, would be clearly injured and damaged, in view of the circumstances stated in the

petition, if the bank were permitted, and indeed were not estopped by every principle of equity, from mending its hold and attempting to occupy a different position from that which existed at the time that it secured, by the representation alleged in the petition, all the fruits of the loan extended by the lender.

The ninth paragraph of the demurrer is but a repetition of the sixth, with which we have already dealt. Even if the plaintiff was negligent in not having more fully investigated the record, the statement that by means of the conduct and promise of the bank's cashier, which induced the attorney making the abstract to report that there were no liens or incumbrances of record, when in fact the deed of the Peoples Bank was of record, affords a sufficient reason why the plaintiff did not exercise usual diligence under the facts of this case. Paragraph ten is without merit, as we have already held in ruling upon a previous demurrer, because it appears from the petition that the defendant bank, through its cashier, knew all the details of the proposed loan by the Georgia Loan & Trust Company to Alexander; and in the view we take of the matter, and for the reasons already stated, the bank should be bound by its agreement, regardless of the omission to repeat in the sixth paragraph of the petition what is already several times alleged in other paragraphs. In paragraph eleven of the demurrer paragraph seven of the petition is attacked, because, as insisted, the alleged agreement resting in parol sought to vary the terms of a written and duly recorded instrument. In our opinion this demurrer is without merit, because there is no attempt on the part of the plaintiff to deny that the terms of the bank's deed are identically as purported to be. There is no effort to vary the terms of that instrument. The petition alleges an agreement on the part of the bank, not to change the deed it already had, but a later agreement which would have done away with it altogether. Such undertakings have been frequently sanctioned by this court, as well as uniformly by courts of other jurisdictions. The remaining demurrers only present in different form the same questions as are raised in demurrers already dealt with.

The two general demurrers, the one that no cause of action is set forth, and the other that there is no equity in the petition, will be treated together. It will be noted that according to the

allegations of the petition the agreement alleged to have been made by the cashier in behalf of the bank was fully performed, and therefore the contract falls within the exception in the statute of frauds which required the agreement to be reduced to writing. An agreement even partly performed, where there is no writing, will be enforced if it has been so far performed that the failure to complete would work a fraud upon the opposite party; and certainly therefore it is a sound rule that "where there has been performance on one side, accepted by the other in accordance with the contract" (Civil Code, § 3223 (2)), the necessity for writing is obviated. *Jackson* v. *Gray,* 9 *Ga.* 77; *Rawlins* v. *Shropshire,* 45 *Ga.* 182; *Wooten* v. *Wilcox,* 87 *Ga.* 474, 476 (13 S. E. 595); *Oliver* v. *Powell,* 114 *Ga.* 592 (40 S. E. 826). As said by Judge Lumpkin in *Jackson* v. *Gray,* supra, "the statute was enacted to prevent fraud, and not to protect it." The plaintiff furnished the consideration for the bank's agreement, and was the sole beneficiary of this agreement. Under the privity thus created arose a right of the plaintiff which equity will enforce. In fact the bank, by its agreement to take a second mortgage, procured Alexander and his attorney to represent to the plaintiff that there was no lien or incumbrance on said land, and that the deed given by Alexander to Winter was the highest and best incumbrance thereon, and the plaintiff relied upon this representation procured by the bank, as appears from the petition, in making its loan to Alexander. It made no difference to the plaintiff whether the bank took a second mortgage on the land or retained its first mortgage. The money furnished by the plaintiff was applied by Alexander on his debt to the bank, and it is a matter of no concern to him whether Winter be given priority over the bank or the bank shall retain priority over Winter. The controversy was between Winter and the bank. It would seem proper that a court of equity should enforce this agreement at the instance of the only person interested in its enforcement and the only person who furnished the consideration. "Privity of contract is not always essential to create a liability; it may arise as well out of the relative situation of the parties." *Savannah &c. Railway Co.* v. *Booth,* 98 *Ga.* 20 (25 S. E. 928), and authorities cited.

In *Bates-Farley Bank* v. *Dismukes,* 107 *Ga.* 212 (33 S. E. 175), Mr. Justice Fish well illustrates the correctness of the doctrine by the following illustration: "There is no privity of contract between the owner of property and the thief who steals it; and yet where one steals the money of another, the latter may recover a judgment against him for the amount stolen, in an action for money had and received. Howe *v.* Clancy, 53 Me. 130. So where one feloniously takes the goods of another and sells and converts them into money, this form of action' will lie against the wrong-doer, for the proceeds of the property stolen. Boston & Worcester R. R. Corp. *v.* Dana, 1 Gray, 83." See also *Central Railroad* v. *First National Bank,* 73 *Ga.* 383; *Citizens Bank* v. *Rudisill,* 4 *Ga. App.* 37 (60 S. E. 818). As quoted by Mr. Justice Lumpkin in *Sheppard* v. *Bridges,* 137 *Ga.* 615, 623 (74 S. E. 245), "'The rule has been variously stated as resting upon: 1. A trust relationship; 2. The equitable right of subrogation; 3. Agency; 4. Privity of contract by substitution; and 5. The broad equity of the transaction.'" In that case Mr. Justice Lumpkin said: "In America, the courts of a few States follow the English rule more or less closely. · But the great weight of authority is to the effect that if the promise is made for the purpose of conferring a benefit on a person, though he be not a party to the contract, or furnish the consideration for the promise, he can bring suit upon it. . . The benefit which is referred to as giving a right of action by a beneficiary, under the American rule, must not be an indirect or incidental one; but the contract, properly construed, must exhibit an intent to confer a benefit on the third party." In delivering the opinion of the court in *Crawford* v. *Wilson,* 139 *Ga.* 654, 660 (78 S. E. 30, 44 L. R. A. (N. S.) 773), Mr. Justice Evans said: "The rule which obtains most generally in America is, that a person not a party to the contract may maintain an action on it if he is a party to the consideration, or the contract was entered into for his benefit; and if a person for whose benefit a contract is made has either a legal or equitable interest in the performance of the contract, he need not necessarily be privy to the consideration." Citing 9 Cyc. 380. See also *Morgan* v. *Argard,* 148 *Ga.* 123, 124, 125 (95 S. E. 986). "If the contract does not state, in express terms, to whom the promise is made, the law declares that

it is made to the person from whom proceeded the consideration
by which it is supported." 6 R. C. L. 881, §. 270. In view of
what has already been said it is not necessary to decide at this
time whether the plaintiff's cause of action may not also rest
upon the doctrine of subrogation, because in our opinion, under
the authorities cited, the action is sufficiently supported under
the fifth ground mentioned by Justice Lumpkin,—the broad
principles of equity—the principle that rests upon the maxim
that he who has in his possession that which ex æquo et bono
belongs to another should be compelled to restore.

*Judgment affirmed. All the Justices concur.*