## 30720. STEVENSON *v.* ATLANTA MISSION HOLDING CORPORATION.

DECIDED MARCH 15, 1945. REHEARING DENIED MARCH 28, 1945.

*Alex M. Hitz,* for plaintiff.

*Chalmers, Jackson, Garner & Sasseville,* for defendant.

PARKER, J. Mrs. Wellington Stevenson sued Atlanta Mission Holding Corporation for $3874.31 and interest on open account

for money alleged to have been loaned and advanced by her to the corporation. The defendant answered by alleging that it was an eleemosynary corporation organized by the plaintiff for the purpose of acquiring certain property known as the "Atlanta Hospital," and using the same for charitable purposes; that the plaintiff personally operated the property as a home for indigent and homeless men from December, 1938, until May, 1942, during which time none of the present officers or directors of the corporation participated in its management; and that it was during this period the money sued for was loaned and advanced by the plaintiff, if said money was loaned and advanced as claimed by the plaintiff. The defendant alleged further that during May, 1942, the plaintiff, realizing her inability to continue the operation of said property without personally advancing sums of money from her own funds, entered into a written agreement with Dr. Paul F. Brown, one of the present officers of the corporation, for the express purpose of relieving the plaintiff of further obligation and loss she was sustaining in the operation of said property. A copy of the agreement was attached to and made a part of the defendant's answer. The material parts of the agreement were as follows: "Whereas, Atlanta Mission Holding Corporation owns and operates a mission for men, known as 'Atlanta Hospice,' and whereas, Mrs. Wellington Stevenson now has charge, largely of the operation of said corporation and said mission, and Dr. Paul F. Brown and associates are desirous of taking over control and operation thereof, and Mrs. Stevenson is willing to relinquish the same upon the terms and conditions herein set forth. Now, therefore, in consideration of the premises, and of the mutual covenants and agreements hereinafter set forth, it is agreed between the parties as follows: . . (5) The new board shall make payments of $40 on the first day of each month to Mrs. Stevenson and these payments shall be applied, first, upon delinquent interest, second, on current interest, and third, on principal, on the present second mortgage held by her. No reduction will be made in the interest now delinquent, nor, in the rate of interest yet to accrue. . . (7) If at the end of one year, the new corporation is functioning and the financial status is as good or better than as of to-day, and, if there are no defaults in payment of first and second mortgages, Mrs. Stevenson will make an outright gift of $3800 evidenced by

the cancellation of the present indebtedness in that amount owing to her." Then followed a list of figures showing the approximate indebtedness of the corporation to be $22,437, including the unsecured debts to Mrs. Stevenson listed as $3800. The defendant also alleged that on or about June 1, 1942, control of the property and effects of the corporation was assumed through a new board of directors, under the terms and conditions set out in the agreement referred to, which board has operated the property since that date as the Union Mission; and that all the terms and conditions of the agreement made with the plaintiff have been met, and any indebtedness to the plaintiff as sued for was denied by the defendant. The plaintiff demurred generally and specially to the defendant's answer. Except as to one paragraph of the answer which was stricken the demurrers were overruled, and to this ruling the plaintiff filed exceptions pendente lite. By agreement of counsel the case was tried by the judge without the intervention of a jury; and a judgment was rendered in favor of the defendant. The exceptions here are on the pendente-lite ruling and to the overruling of the plaintiff's motion for new trial.

The general demurrer attacked the agreement set up in the defendant's answer on the ground that the coporation was not a party to the agreement, although it was entered into for the corporation's benefit; that it was without consideration as to the corporation; that Dr. Brown was not in privity with the corporation, and that no trust was created for the corporation. The special demurrers attacked the allegations in the answer referring to the agreement on the grounds that the agreement was incomplete, in that the parties had not attached their signatures thereto under their seals, and because the assent of the proposed new board members was not evidenced by their signatures on the face of the agreement; and that said agreement was against public policy, was a nudum pactum, and was lacking in a necessary party. We do not deem it necessary or profitable to elaborate on the grounds of the demurrers, or to set out in detail the substance of the other special demurrers. The plaintiff has raised in her motion for new trial, and has argued in this court, only those questions presented by her objections to the agreement set up as a defense by the defendant. Since the controlling questions raised by the demurrer and by the alleged errors in the trial are the same, it is necessary only that

we decide whether the agreement was properly allowed as a part of the answer.

The agreement between Mrs. Stevenson and Dr. Brown related to the business of the corporation, the operation of a mission for men. At the time they made the agreement Mrs. Stevenson was the secretary and treasurer, and was a member of the executive committee of the corporation, and had charge, "largely," of its operations, and Dr. Brown was a director. The object of the agreement was to better carry out the purposes and plans of the corporation, and it was made for the benefit of the corporation, and the evidence tended to show that benefits inured to the corporation. The plaintiff also received benefits under the agreement in that payments of $40 per month were made to her on a second mortgage held by her. The effect of the defendant's plea in setting up the agreement under which the plaintiff relinquished or released the $3800 claim against the corporation was that she was estopped from asserting it. It must be remembered also that the whole project was an eleemosynary enterprise, a mission of mercy and helpfulness to indigent men, and it was not contemplated that any of those interested in it would derive profit or gain from its operation.

"An agreement capable of an interpretation which will make it valid or legal will be given such interpretation if the agreement is ambiguous." 12 Am. Jur. 793, § 251. "The power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Equitable Loan & Security Co.* v. *Waring,* 117 *Ga.* 599 (44 S. E. 320, 62 L. R. A. 93, 97 Am. St. R. 177). "A promise of another is a good consideration for a promise." Code, § 20-304. "The rule which obtains most generally in America is, that a person not a party to the contract may maintain an action on it if he is a party to the consideration, or the contract was entered into for his benefit; and if a person for whose benefit a contract is made had either a legal or equitable interest in the performance of the contract, he need not necessarily be privy to the consideration." *Crawford* v. *Wilson,* 139 *Ga.* 654, 660 (78 S. E. 30, 44 L. R. A. (N. S.) 773). *Peoples Bank* v. *Harry L. Winter Inc.,* 161 *Ga.* 898, 906 (132 S. E. 422). See

262

also Am. Jur. 825, § 277. "A promise, though a mere nudum pactum when made, and consequently unenforceable against the promisor at the time when made, may become binding and enforceable, if the promisee subsequently furnishes the consideratiôn contemplated, by doing what he was expected to do." *Peeples* v. *Citizens National Life Ins. Co.*, 11 *Ga. App.* 177 (74 S. E. 1034). "A nudum pactum becomes binding when one party performs his part and the other party gets the benefit of such performance." *Webb* v. *Pullman Co.*, 57 *Ga. App.* 772, 775 (196 S. E. 477), and authorities cited. "While the contract as originally entered into might not have been enforceable, on the ground that it was without consideration and unilateral, the part performance of the contract and the services rendered in the business by the petitioner . . supplied the lack of mutuality and rendered the contract enforceable." *Brown* v. *Floding,* 173 *Ga.* 400, 404 (160 S. E. 604).

We have carefully considered all of the authorities cited by counsel for the plaintiff. They do not hold contrary to the principles we have referred to, and some of them sustain our rulings herein. See *Sybilla* v. *Connally,* 66 *Ga. App.* 678 (18 S. E. 2d, 783), and cit. Under the foregoing principles of law, as applied to the facts of this case, we hold that the agreement between Mrs. Stevenson and Dr. Brown was not against public policy, was not otherwise illegal or unenforceable at the time the plaintiff sued, and that the defendant could plead the agreement in defense to the action of the plaintiff. The trial court did not err in overruling the demurrers to the answer. There being ample evidence to sustain the finding in favor of the defendant, made by the trial judge without the intervention of a jury, the court did not err in so finding; and there was no error in overruling the plaintiff's motion for new trial.

Judgment affirmed. Sutton, P. J., concurs.

FELTON, J., dissenting. Assuming that the corporation could set off the contract on the theory that it furnished the consideration, what the corporation did furnish was not in law a consideration. The so-called consideration for which Mrs. Stevenson promised to make a gift of $3800 was that at the end of one year the new corporation should be functioning and the financial status should be as good or better than as of the date of the contract, and that

there should be no defaults in the payment of the first and second mortgages. These were duties which the corporation was legally bound to perform in any event and could not constitute a consideration for a promise whether the corporation agreed to perform them or whether its performance of them was the condition of action to be taken advantage of by another. Furthermore, on its face the agreement shows that there is a mere promise to make a gift. The very language used shows that this part of the agreement was not made as a contract, and that the obligations to be performed by the corporation were not dealt with as a consideration. "Nothing is consideration that is not regarded as such by both parties." And as "one does not commonly pledge one's self to generosity in the language of a covenant," so one does not pledge himself to binding legal obligations in the language of generosity. I am of the opinion that the promise to make the gift was not intended to be binding as a contractual obligation, and that if it was it was without consideration.